# REPORTS OF CASES

DETERMINED IN

# THE SUPREME COURT,

## APRIL TERM, 1864.

---

## M. M. RICHARDSON *v.* DANIEL WILLIAMSON AND ISAIAH HANSCOM.

STATUTE OF LIMITATIONS—MEXICAN GRANT.—In an action to recover lands where the plaintiff claims title to the demanded premises derived from a Spanish or Mexican grant, and the defendant has been in five years adverse possession under a claim of title, he may rest with proof of his five years adverse possession, and the burden is cast upon the plaintiff of proving that less than five years have expired since the final confirmation of the grant, in order to defeat the defense of the Statute of Limitations.

SAME.—Where the plaintiff proves title derived from a Spanish or Mexican grant, and rests, and the defendant proves five years adverse possession under a claim of title, as a defense, and rests, the defendant is entitled to judgment unless the plaintiff shows in rebuttal that less than five years have expired since a final confirmation.

STATUTE OF LIMITATIONS—CONSTRUCTION OF.—Section 6 of the Act defining the time for commencing civil actions is the only section in the Act applicable to actions for the recovery of lands, and covers every case for the recovery of the possession of land ; and the proviso to section 6 covers every case of title derived from the Spanish or Mexican Government.

SAME.—Section 7 of said Act, and the proviso thereto attached, refer to personal actions founded upon the title to real property, and not to actions for the recovery of such property.

SAME.—The provisos to sections 6 and 7 of said Act are not limited in their applica-
tion to cases where the plaintiff claims under a Mexican or Spanish grant, and the
defendant contests the validity of such grant, but apply to all cases where the
original source of title is from such grant, even if both parties claim to derive title
from the same grant.

APPEAL from the District Court, Seventh Judicial District,
Solano County.

When the pleadings in the case at bar were completed, the
statute regulating proceedings and pleadings required a repli-
cation to affirmative matter amounting to a defense to the
action of the plaintiff.

The other facts are stated in the opinion of the Court.

*Whitman & Wells*, for Appellants.

The following question was submitted by the Court to the
jury, and by them answered in the affirmative: "Has William-
son, the defendant, had possession of the premises in contro-
versy for five years continuously, prior to the commencement
of this suit, holding the same adversely to the plaintiff and his
grantors?" It would seem that this finding of the jury was
conclusive of the question. There is no dispute as to the actual
and undisturbed possession of defendants, and the only ques-
tion made in the Court below was that the statute could not
run against the plaintiff in the case, as the holdings of himself
and defendants were all, as stipulated, under the grantee of a
Mexican grant. This position is untenable. The Act of
1855 simply gives to those claiming under a Mexican grant
the indulgence of four years from the final confirmation
thereof in which to bring suit. In other words, the assump-
tion of the statute is that the non-confirmation of a grant is a
disability, and during the continuance of that disability the
statute shall not run against the party laboring thereunder.
But *non constat*, in the case at bar, but the grant of Vallejo had
been confirmed more than five years before the commencement
of the suit. The onus, in all cases, lies upon the party seek-
ing the benefit of the disability; and if the plaintiff wishes to
avail himself of the fact that the grant never has been con-

Richardson *v.* Williamson *et al.*

firmed, or that five years have not elapsed since its final confirmation, it is upon him to show it. There is no evidence in the case upon the question; all that appears touching the original title, under which all parties claim, is contained in the stipulation previously cited. To the point of the burden of proof, we cite *Wheeler* v. *Webster*, 1 E. D. Smith, 1. Admitting this position to be incorrect, however, still we contend that the plaintiff cannot avail himself of the indulgences of the statute of 1855. They were not intended to apply to any such case. There is no question here of any adverse holding as against the original title, but the question is, which of the two adverse claimants has that original title as against the other? As has been said, the theory of the statute of 1855 is, that the non-confirmation of a Mexican title is a disability, and the statute shall not run against any person laboring under such disability, and shall only commence when such disability is removed by final confirmation. To persons, however, claiming under the same Mexican grant, no such presumption accrues. By their acknowledgment of the title, the disability as to them is removed and ceases. The title as to them, as between each other and their grantor, is finally confirmed. The reason of the rule, then, fails, and the rule should and does cease to exist. Neither party in this case, then, can claim the benefit of this indulgence as against the other, and the plea of the statute, without the proviso, holds good. (*The Trustees* v. *Payne*, 3 Monr. 161.)

*John Currey*, for Respondents.

Our Statute of Limitations, like those of other States, and the statute 21 James I, exempts from its operation persons laboring under specified disabilities (Wood's Dig., 47, 48, §§16, 22, 23); and it may be conceded, as it is undoubtedly the rule, that he who would avail himself .of any particular disability must, in the first instance, establish its existence; but, when its existence appears, it will be presumed to have continued, unless the disability be of a nature that by the lapse of time must have become removed; for instance, where

the disability of infancy or imprisonment for a definite time may be pleaded, and the period of infancy or imprisonment appears to have expired; but if the disability may be without a limitation, as insanity or residence beyond the jurisdiction, then, in order to deprive the party pleading the disability of exemption from the operation of the statute, his adversary must affirmatively show that such disability was removed, so that the period of limitation had completely run before action brought. (*Adm'r of Anderson v. Smith*, 2 McCord, 269; Pothier on Obligations, App. 573; Matthews on Presumptive Ev. 18; *Hall* v. *Warren*, 9 Vesey, 611; 1 Fonb. Eq. 71.)

· The 27th section of the Statute of Limitations of New York (2 N. Y. Rev. Stat. 297) is in substance the same as the 22d section of our statute above referred to, which provides that if, when the cause of action shall accrue against a person, he is out of the State, the action may be commenced within the term limited therein after his return to the State; and if, after the cause of action shall have accrued, he depart the State, the time of his absence shall not be part of the time limited for the commencement of the action. There has existed in Massachusetts a statute of like import with the first part of this 22d section of our Act, and the 27th section of the New York Act, which is in substance a transcript of the 4 and 5 Anne, c. 15, sec. 19. By the authorities involving the consideration of these statutes the questions of pleading and evidence are disposed of, as also the point arising in this case, as upon whom was the burden of proof after it appeared that the plaintiff's title to the demanded premises was derived from the Mexican Nation.

By the authorities it is plain that after it is established that a disability of a nature that might extend through all time existed, the burden of proof rests on the party who would avoid the disability to show it removed at a period from which the statute could have completely run. (*Fowler* v. *Hunt,* 10 John. 464; *White* v. *Bailey*, 3 Mass. 270; *Cole* v. *Jessup*, 2 Barb. 310; *Little* v. *Blunt*, 16 Pick. 359; *Faw* v. *Roberdeau*,

3 Cranch, 174; *Ford* v. *Babcock*, 2 Sand. 519; *Didier* v. *Davison*, 2 Barb. Ch. R. 478.)

Upon the theory that a disability existed because the plaintiff's title was derived from the Mexican Government, which would avoid the running of the Statute of Limitations until the final confirmation of such title, then, when it appeared that the title was so derived, the disability which obstructed the running of the statute was established, and afforded an effectual answer to the defendant's plea. If it might have been desired on the part of the defendants to avoid the effect of the fact of the disability so established, the burden of proof was upon them to do so, because the removal of such disability was essential to the maintenance of the plea of the Statute of Limitations.

If section six of the Limitation Act, as amended in 1855, was the only provision of the statute affording protection to the owner of land under title derived from the Spanish or Mexican Governments, there would be much greater strength in the appellant's position; because, by that section, it seems to me, there is no saving of the rights of such an owner, after five years possession by an adverse claimant, until a final confirmation of the title. It is quite evident that by this section the Legislature had in contemplation a party *claiming real estate under a title derived from the Spanish or Mexican Governments*, who had been, and was, and would continue to be, disabled from maintaining his action before a final confirmation of such title, and hence by said section provision was made for the protection of persons holding imperfect titles derived from a former Government, on which they could not maintain an action until after final confirmation. Provision having been made by section six for the protection of the class of titles above mentioned, there remained another and superior class of titles, derived from the Spanish and Mexican Governments, on which an action might be maintained, though, as experience had proved, the obstacles in the way might be of extreme difficulty. It was, therefore, provided by section *seven*, that, "No cause of action, or defense to an action, founded

upon the title to real property, or to rents, or to services out of the same, shall be effectual, unless it appear that the person prosecuting the action, or making the defense, or under whose title the action is prosecuted or the defense is made, or the ancestor, predecessor, or grantor of such person, was *seized* or *possessed* of the premises in question within five years before the commencement of the act in respect to which such action is prosecuted or defense made, *or unless it appear that the title to such premises was derived from the Spanish or Mexican Governments,* or that the same was confirmed by the Government of the United States or its authorities within five years of the commencement of such action."

This section contains in itself an authentic interpretation of its meaning. Understanding it as its words plainly import, it embraces titles to real property of the following classes :

1st. Those evidenced by the *seizin* of the party, his ancestor, predecessor, or grantor.

2d. Those evidenced by the *possession* of the party, his ancestor, predecessor, or grantor.

3d. Titles derived from the Spanish or Mexican Governments.

4th. Titles confirmed by the Government of the United States, or its authorities.

In respect to the first, second, and fourth class of titles here mentioned, there is a fixed limit within which an action must be brought after the existence of a specified contingency ; but, *in respect to the third class, viz., titles derived from the Spanish or Mexican Governments, there is provided no limitation,* for the section in its provision respecting Spanish and Mexican titles is, that no cause of action, or defense to an action, founded upon title to real property, etc., shall be effectual, *unless it appear that the title to such premises was derived from the Spanish or Mexican Governments.* Then, if it so appears that the title was derived from the Spanish or Mexican Governments, of what avail would it be to the disseisor that he had held the premises adversely to the true owner for twice five years ?

If I be in error on the point that *titles* derived from the Spanish or Mexican Governments are excepted from the operation of the Statute of Limitations, I submit that it is sufficient to avoid the plea of limitation that it appears in evidence that plaintiff's cause of action was founded upon title to the demanded premises derived from the Mexican Government; for, by reference to said section seven, it will be seen that a confirmation, within five years or otherwise, is not at all necessary to be alleged or proved in order to meet the plea of the Statute of Limitations; and, therefore, upon the defendants was the burden of proof to show that a confirmation of the title to the demanded lot (which was admitted to have been in General Vallejo on the 29th of December, 1851, as the grantee of the Mexican Nation) was confirmed more than five years before this action was commenced.

It is said on the part of appellants that, as both parties claim from the same source, the title as to them and their grantor is finally confirmed; that, by their acknowledgment of the title, the disability as to them is removed and ceases; and that, as to persons claiming under the same Mexican grant, no presumption of disability can arise; and, it is concluded, that neither party can claim the benefit of the presumed disability, and that, therefore, the plea of the statute, without the proviso, holds good.

These positions may be answered in few words:

1st. Parties claiming title at the trial of a cause from the same source cannot confirm a title derived from the Spanish or Mexican Governments, either within the meaning of the Act of Congress of 1851 or the Statute of Limitations of 1855.

2d. There can be no objection to the plaintiff's claiming the benefit of the *status*, which appellant's counsel denominate a disability, because the defendant's position or relation to the property may not be in antagonism to the title at the source; and this is so because the statute has declared that no lapse of time shall bar the right of action until five years after the happening of a specified event, and no exception is pro-

vided for the case where both parties claim from the same source.

3d. If the acknowledgment of title at the time of trial could deprive the owner under title derived from the Mexican Government of the exemption which the statute declares, then the disseisor, for five years before the action was commenced, could, by acknowledging the validity of the title, when he tortiously ousted the owner of the premises, abrogate the statute and defeat the end to be secured thereby.

4th. If the acknowledgment of the title and the claiming of title by the parties from the same source could operate as a final confirmation of it, then the date of such confirmation must be the time of the acknowledgment, which was after the action was commenced, and so, upon that theory, the statute had not run its full course.

By the Court, SAWYER, J.

This was an action to recover a lot in the Town of Vallejo, brought originally against the defendant, Williamson. Williamson answered, denying the allegations of the complaint. Hanscom filed a petition setting up title in himself, and alleging that Williamson was in possession as his tenant; that he (Hanscom) had been by himself and his tenants in adverse possession of the premises for five years before the commencement of the suit, and asking that he might be allowed to appear as defendant and resist the action. He also denied the allegations of the complaint.

The plaintiff replied, denying the allegations of the petition, and alleging that he held under a title derived from the Mexican Government, and that five years had not elapsed since the final confirmation of said title by the Government of the United States. Both parties claim title under Vallejo, the grantee of the Mexican Government. There was a general verdict for the plaintiff. The jury also answered the following special issues submitted to them in the affirmative, viz:

First—"Has Williamson, the defendant, had possession of

the premises in controversy for five years continuously prior to the commencement of this suit, holding the same adversely to the plaintiff's grantors?"

Second—"Did the parties plaintiff and defendant acquire title (each of them) from the Mexican Government through M. G. Vallejo, the grantee of the land in controversy?"

Judgment was rendered for the plaintiff on the verdict, and the defendants appeal.

No evidence having been introduced upon the question as to a confirmation of the Mexican grant under which the parties claim, and there being no special finding on that point, the appellants insist that the special finding of the five years adverse possession in defendants controls the general verdict, and that the defendants were entitled to a judgment. This brings us to the first question discussed in the briefs, viz: upon which party was the burden of proving the fact and date of the final confirmation of the Mexican grant by the Government of the United States?

Section six of the Statute of Limitations provides that "No action for the recovery of real property, or for the recovery of the possession thereof, shall be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the premises in question within five years before the commencement of such action; *provided,* however, that an action may be maintained by a party claiming such real estate, or the possession thereof, under title derived from the Spanish or Mexican Governments, or the authorities thereof, if such action be commenced within five years from the time of the final confirmation of such title by the Government of the United States, or its legally constituted authorities."

We concur in the views expressed upon the former hearing —that, under this section, the burden was upon the plaintiff to show either that there were proceedings still pending to procure a final confirmation of the title, or that a final confirmation had been had, and that five years had not elapsed since such confirmation. The defendant shows that he has been in

38

the adverse possession of the premises for a period of five years before the commencement of the action. This, under the general provisions of the section, defeats the plaintiff's *prima facie* case. It then devolves upon the plaintiff to affirmatively show a state of facts which brings him within the exception mentioned in the proviso. It is not enough to show that he claims under a title derived from the Mexican Government—that fact alone does not bring him within the proviso; it is also necessary that the suit should be brought within five years after the final confirmation of the title. Both facts must co-éxist to bring the case within the terms of the exception. That it rests upon the plaintiff to allege and prove a claim of title under a Mexican grant, in order to defeat the defense of five years adverse possession, is not controverted. If it is necessary for the plaintiff to allege one of the constituent facts of the exception, viz: that he holds under a Mexican grant, it is also necessary to allege the other fact, which is essential to constitute a case within its provisions; and if it is necessary for him to allege it, the burden of proving the allegation is on him. The fact of confirmation, if it exists, and its date, are affirmative matters, easily susceptible of proof; while to require proof that there was no confirmation would be to require the defendant to prove a negative.

The plaintiff, in his replication, alleged his Mexican grant, and that five years had not elapsed since its final confirmation. He evidently supposed it necessary to do so to avoid the Statute of limitations set up by Hanscom. In this supposition he was clearly right. If it was necessary for him to allege those matters, it was, of course, necessary to prove them. We think it clear that the burden of proof on this point rested on the plaintiff.

The next question is, as to whether the five years adverse possession of the defendants is a bar to the plaintiff's action?

It is admitted by respondent's counsel that the grounds relied on by appellants would have great force if section six, above quoted, contained the only provision of the statute bearing upon the rights of parties holding lands under titles derived

from the Mexican Government. But it is very ingeniously argued, that, in adopting this section, the Legislature had in contemplation only one class of Spanish or Mexican titles— those imperfect titles upon which the holders could not maintain an action at all until after final confirmation—that there is another, superior class of Spanish or Mexican titles, upon which actions might be maintained (though· experience had shown with extreme difficulty) without confirmation; and that section seven was intended to provide for this class of cases, and the provision is—according to the argument—that this class of cases is not subject to the Statute of Limitations at all; that they are entirely excepted out of and withdrawn from the operation of its provisions. The argument is mainly based upon the use of the word " *or*," in the clause " unless it appear that the title to such premises was derived from the Spanish or Mexican Governments, *or* that the same was confirmed by the Government of the United States, or its authorities, within five years before the commencement of such action." We are unable to subscribe to this view. Had the Legislature intended such a result, it would have been easy to make the exception in clear and unambiguous terms. It is impossible to reconcile such a construction with the obvious policy and object of the law, as derived from the other provisions of the Act. The word " and " would doubtless have better expressed the idea intended; but the word " or " is often used *conjunctively*, as well as *disjunctively*, and we have no doubt it was so intended to be used in this instance. The construction contended for would render this section repugnant to the other provisions of the Act, and especially to section six, which is the controlling section in respect to actions for the recovery of real estate.

But, in our opinion, section six is the only section applicable to this action. Before the amendment in 1855 it read as follows :

" No action for the recovery of real property or for the recovery of the possession thereof shall be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor

was seized or possessed of the premises in question within five years before the commencement of such action."

This is broad in its terms, and covers every case for the recovery of the possession of land. There is no room for misconstruction. It was found in practice that it was expensive and difficult to prove up a Spanish or Mexican title in such a manner as to maintain an action upon it against intruders.

Under the laws of the United States, most of the claims under Spanish and Mexican grants had been presented to the Board of Land Commissioners for confirmation prior to 1855, and the statute of the National Government contemplated that all should be presented to that tribunal for adjudication within a prescribed time, or that, in default thereof, the lands should be deemed to be public lands. When the five years under the Statute of Limitations was about to expire—the time limited by the law of Congress for presenting claims for confirmation having already elapsed—it was found that great hardship would result to claimants under Mexican titles unless some change should be made in this provision of the Act under consideration. It was accordingly amended in 1855 by adding to section six these words:

"*Provided*, however, that an action may be maintained by a party claiming such real estate or the possession thereof under title derived from the Spanish or Mexican Governments, or the authorities thereof, if such action be commenced within five years from the time of the final confirmation of such title by the Government of the United States or its legally constituted authorities."

There was no change made in the language of the section as it originally stood; it was as broad as ever in its terms; but the foregoing clause was added, and this proviso pointed out the exceptions—and the only exceptions—intended to be engrafted upon this provision of the Act. The language of the proviso clearly covers every case of a title derived from the Spanish or Mexican Governments then existing in contemplation of law. There is no room for supposing that any class of cases was omitted to be provided for in some other section.

It is undoubtedly true that the profession have been not a little puzzled to give a proper construction to section seven—especially since the amendment in 1855. Its provisions have been frequently discussed in the District Courts in actions to recover lands, but we are not aware that this section has been construed by the Supreme Court. To whatever cases it may be supposed to apply, we are clear that its provisions were never intended to be applicable to an action for the recovery of real estate. There was no necessity for the provision of this section as applicable to an action to recover the possession of land. Section six provides fully for such cases. It is not to be supposed that the law-making power intended to repeat the provisions of the preceding section. Some other action depending upon the title to realty must have been contemplated.

To understand this section, it will not only be necessary to consider the terms of the section as it stood before the amendmendment of 1855, but also to trace it back to the statute from which it was borrowed, and consider the condition of things under which it was originally enacted.

Our Statute of Limitations is based upon the statute of New York; in fact, most of the sections are copied verbatim, with the exception of shortening the time. Section six, before the amendment of 1855, was a literal copy of section five of the statute of New York, except the New York statute has "lands, tenements, or hereditaments," in the place of the words "real property," in our Act. Section seven of the Statute of California corresponds to section six of the New York Act. The following is the section. When the two Acts differ, the language of the Act of New York is inclosed in parentheses, for which the words in brackets are substituted in the California Act:

"[No cause of action or defense to an action founded upon the title to real property] (No avowry or cognizance of title to real estate) or to (any rents or services) [rents or to services out of the same] shall be [effectual] (valid) unless it appear that the person [prosecuting the action or making

the defense] (making the avowry,) [or under whose title the action is prosecuted or the defense is made] (or the person in whose right the cognizance is made,) or the ancestor, predecessor, or grantor of such person, was seized or possessed of the premises in question within [five] (twenty) years before the [commencement of] (committing) the act, in [respect to which such action is prosecuted or defense] (of which such avowry or cognizance is) made." (2 Rev. St. N. Y. 293; Stats. Cal. 1850, p. 344, Sec. 7.)

It will be seen that the only change in the language is in substituting for the words "No avowry or cognizance of title to real estate," the words "No cause of action, or defense to an action, founded upon the title to real property," and such other changes as were necessary to make the remainder of the section correspond to this change in the phraseology. The terms "avowry" and "cognizance" had a well known signification, which had reference to proceedings growing out of taking property by distress. At the time this Statute of Limitations was enacted in New York, a landlord was authorized to distrain for rent; and there, also, as in England, the owner of land was authorized to distrain, when the cattle of another were found in his grounds, *damage feasant.* (2 Rev. Stat. N. Y. 517; 3 Black. Com. 7.)

When property was distrained, the remedy by the owner of the property taken was an action of replevin. "Upon this action being brought, the distrainor, who is now the defendant, makes *avowry;* that is, he avows taking the distress in his own right, or the right of his wife, and sets forth the reason of it, as for rent arrears, damage done, or other cause; or else, if he justifies in another's right, as his bailiff, or servant, he is said to make cognizance; that is, he acknowledges the taking, but insists that such taking was legal, as he acted by the command of one who had a right to distrain; and on the truth and legal merits of this avowry, or cognizance, the case is determined." (2 Black. Com. 149.)

In this way, it will be seen there would arise an "avowry, or cognizance of title to real estate;" and such cases are pre-

cisely the cases provided for in this section of the statutes of New York.

The first Legislature of this State—as some other States had done before—finding a well digested Statute of Limitations, with its meaning already settled by construction, adopted it almost bodily, as will be seen by comparing the different sections of the two Acts. But the Legislature did not see fit to adopt the practice of distraining for rent, damage done by cattle, etc., and when they came to consider section seven, they found the terms used in the New York statute inapplicable to the condition of things in California. But the action for rent, damage done by cattle, and perhaps other personal actions, dependent upon title to real estate, remained; and it doubtless occurred to them that the terms "avowry and cognizance" might be dropped and other words substituted, and the provisions of this section be thus adapted to such cases and made applicable to the prosecution made necessary by the non-adoption of the law relating to distress, as well as to the defense, and hence the retention of the section thus modified. Such may reasonably be supposed to have been the case. Whether or not these are the precise cases or the only cases intended to be provided for, or whether or not the section is of any practical utility under the condition of the law in California relating to such cases, it is not necessary now to determine. But this brief review of the origin and history of this section will serve to throw some light upon its construction, and whatever other cases may or may not be embraced within the scope of its provisions, we think it clearly shows that the section, as it stood in the Act of 1850, was not designed to cover the same cases provided for in the preceding section. It must have been intended for some other purpose. Granting this view to be correct, it follows that the amendment of 1855 (which was only an addition, in the nature of an exception, to the section as it before stood) must have referred to the classes of cases already provided for it that section—that is to say, personal actions founded upon the title to real property, and not to actions for the recovery of such property.

It may be well to remark, in passing, that the substitution in our Act of the word "effectual" for the word "valid" does not appear to be very happy, as "effectual" does not seem to be the precise word to use in connection with the phrase "cause of action;" and the substitution of the words "commencement of" for the word "committing" is still more infelicitous.

The object of the change is not very apparent, and the tendency of the use of the words "*commencement of the Act*" in the place of the words "*committing the Act*" is to obscure the sense rather than to make it clear. Possibly the change may have originated in a clerical error.

The judgment must be reversed on the points already discussed. But there is another question made in the case and argued by counsel—one that has also been frequently raised in the District Courts. The question will doubtless arise again on the new trial in the Court below, and for that reason it is better that it should be decided now.

It was stipulated by the parties, and found as a fact by the jury, that both parties claim title under the same Mexican grant, through Vallejo. It is insisted that, because both parties claim under Vallejo, and the Mexican title was not in question—the action was necessarily founded on the conveyance from Vallejo only, and not upon a Spanish title, and that the proviso contained in section six is, therefore, inapplicable to the case.

But the plaintiff does, nevertheless, claim under a title derived from the Mexican Government. It is so stipulated and found. He comes clearly within the language of the law: "*Provided*, however, that an action may be maintained by a party *claiming* such real estate or the possession thereof under title derived from the Spanish or Mexican Governments, or the authorities thereof, if such action be commenced within five years from the time of the final confirmation of such title," etc., etc. This language is clear and unmistakable. There is no exception in favor of cases in which the defendant claims under the same grant, and does not contest the validity of the Spanish or Mexican title. The exemption from the bar stated in

the first clause of the section is made to depend upon the fact of "claiming such real estate" under a Spanish or Mexican title, and not upon the question as to whether the defendant upon the trial shall put him to the trouble of tracing his title back to its source. It is doubtless true that the policy of the law was founded upon the extreme difficulty and great expense of proving up a Spanish title before final confirmation. And it may be that, in a particular instance arising in practice, the reason upon which the law was founded may not operate with full force; but the law deals in generalities, and cannot provide for every case that may arise. In this instance it has provided for a whole class of cases, and the distinguishing characteristic of the class is that the land is claimed under a certain kind of title. In this case the complaint alleges a title in fee simple in the ordinary general terms. The answer denies every allegation. It also sets up the Statute of Limitations in avoidance. The plaintiff replies, that he claims under a Mexican grant, and that five years have not elapsed since the final confirmation, and these are the issues presented by the pleadings. They certainly present a case within the proviso. The pleadings put the plaintiff upon proving his Spanish title. The defendant is in possession, and the plaintiff must show a title of some kind to enable him to recover. The defendant has denied generally the allegations of the complaint. He may fold his arms, and quietly rest until the plaintiff shows his title. Would any lawyer say that the plaintiff could safely rest by showing a title from Vallejo without going beyond him? He might possibly be able to show a possession in Vallejo, and thus make out a *prima facie* case; but then, again, he might not. But admitting that he could, would it be prudent for a plaintiff holding under a Mexican grant to risk a nonsuit by resting without connecting himself with his ultimate source of title? But it is said in this case there was a stipulation that both parties claimed under a Mexican grant. True, upon the trial this stipulation was made, and it obviated the necessity of proving what otherwise would have been necessary under the pleadings. But how can the plaintiff know

39

in advance what stipulation the defendant may be willing to make, or upon what title he may base his defense? In every instance the defendant may, by denying the allegation of the complaint, put the plaintiff to the trouble of tracing his title to its source, and if he fails in this, subject him to the risk of a nonsuit before disclosing at all the title upon which he rests his defense.

A party holding lands under a Spanish grant, knowing that a defendant could, and reasonably presuming that he would, put him to the proof of his Spanish title, might well be deterred by the well-known obstacles of litigating an uncomfirmed title, from bringing suit until the title under which he claimed should be finally confirmed, and in such case the construction sought to be put upon this provision of the Act might be the means of defeating the acknowledged policy of the law. Under such a construction, a party, while waiting for the final confirmation of the title under which he claims, relying upon the proviso of section six, might defer bringing suit against the occupants of his land for a period of five years, and then, when his action is barred, learn, for the first time, that the occupants set up some shadowy claim under the same title, but sufficient to give them color, and set the statute in motion and cut off his right of action. The Legislature did not contemplate that claimants under Spanish grants should be subjected to such risks. Such a law would prove a snare rather than a protection.

If we follow the obvious import of the language of the statute, and give it the construction that the great mass of men would naturally put upon it, we shall have a simple, plain, and unchangeable rule of action, easily understood, and not liable to mislead.

But if, upon an argument, however ingenious and able, drawn from the supposed policy of the law, we attempt to engraft upon this provision an exception not clearly imported by the language of the Act itself, we shall have a rule difficult of application, and one that is liable in practice to lead to injustice and inextricable confusion.

In our opinion, then, the exemption specified in the proviso under consideration does not relate to cases merely in which the validity of the Spanish or Mexican title is the question to be litigated and determined, but that it extends to all cases in which the plaintiff claims land under such a title; that it applies to all cases in which the plaintiff is liable to be called upon to connect himself with the Spanish or Mexican Government as the source of his title; and does not depend upon the contingency as to whether or not the defendant does in fact call upon him to establish by proof a Spanish or Mexican title.

The plaintiff's right, under the statute, to maintain his action, depends upon the condition and character of his ultimate title, and not upon the volition of the defendant.

This case presents important questions not before decided by this Court. There are some technical difficulties on the face of the record in the way of rendering judgment for the defendants, if it were otherwise proper. But, independent of these considerations, we think the ends of justice, under the circumstances of this case, require that a new trial should be had. As the case goes back for a new trial, we will add the suggestion, that there is no finding of the fact that Williamson was the tenant of Hanscom—an important fact, as the pleadings stand, for the reason that Williamson did not set up the Statute of Limitations—and the findings of the jury only state that *Williamson* had been in adverse possession for five years. It is averred in the statement, however, that "defendants introduced evidence tending to show that defendant, Williamson, was, and that he had been for more than five years, a tenant of Hanscom." And no testimony to the contrary appears in the statement. It is also stated that "it was admitted by the parties hereto that defendants have been in possession for five years prior to the commencement of this suit." The jury, then, would necessarily have found these facts in the special verdict had the question been submitted to them. It is not found, however, and the general verdict is for plaintiff. The general verdict is, therefore, contrary to the evidence and stipulated facts on this point, and the

special verdict fails to find one of the facts essential to control the general verdict. The argument of the case seems to have been on the hypothesis that Williamson was Hanscom's tenant.

The fact of a final confirmation of the grant is not distinctly alleged in the replication. It can only be inferred from the allegation that "five years had not elapsed since the final confirmation," etc. It would be better in such cases to allege directly either that the claim has been presented for confirmation, and the proceeding is still pending, or that the claim has been finally confirmed, stating the date of the confirmation.

We allude to these points so that the parties may, upon the next trial, avoid any occasion for taking an appeal upon technical grounds.

The judgment is reversed and a new trial ordered, with leave to either party to amend his pleading as he may be advised.

Mr. Justice Currey, having been of counsel, did not sit in this case.