## JAMES F. HIBBERD et al., Respondents, v. JOHN SMITH et al., Appellants.

### No. 2104; March 21, 1870.

**Judgment Lien—Omission of Christian Name in Docket.—The** sole purpose of the judgment docket is to furnish a record which may be conveniently referred to by persons interested in lands on which a lien may be thought to have attached, and the omission of a Christian name in naming there the judgment debtor is not such a departure from the statutory requirements in that connection as to vitiate the lien.

**Judicial Sale—Advertisement—Return.—The Title of a Purchaser** of real estate at a sheriff's sale does not depend on and is not affected by the advertisement or the return of the officer to the writ, but rather on the judgment, execution, sale and deed.

**Deed.—The Delivery of a Deed to a Stranger for the Use of the** grantee is a valid delivery, and takes effect from the time of the act

by relation, provided the deed is afterward accepted by the grantee and the grantor intended it to take effect as a conveyance.

**Deed.—A Title by Relation cannot Override an Intervening Conveyance** or encumbrance acquired in good faith.

**Limitation of Actions—Title Derived from Spanish Government.** The term "final confirmation by the government of the United States," as used in the proviso of the act of 1855 amending the statute of limitations, includes the issuance of the patent, and when title is derived from the Mexican or Spanish government, the statute, in actions for the recovery of real estate, does not begin to run until the patent issues.

**Foreclosure Sale—Lien for Deficiency.—The Docketing of a Judgment** of foreclosure does not create a lien for the deficiency on the property of the judgment debtor, but to establish such a lien the deficiency, when ascertained, must be docketed as a personal judgment. From the time of so docketing only does such lien commence.

**Ejectment—Restitution.—A Writ of Execution Issued on a Judgment** in ejectment for a restitution of the land and for rents and profits need not (the writ of restitution having been already executed) recite the judgment further than to identify it.

**Appeal.—Exceptions Taken on the Ground That the Findings are not Supported** by or are contrary to the evidence are not valid; if findings are open to such objection, the party should move for a new trial.

APPEAL from Fourth Judicial District, San Francisco County.

A. M. Crane & Hoge for respondents; Hittell, Reynolds & Cobb for appellants.

See Hibberd v. Smith, 39 Cal. 145; 50 Cal. 511.

CROCKETT, J.—If the facts are correctly found by the court, it is manifest the title of the demanded premises is in the plaintiffs. The title having been finally confirmed to Antonio Peralta, and the facts as found showing a regular deraignment by mesne conveyances from Peralta to the plaintiffs, they are clearly entitled to recover on these facts, unless the action is barred by the statute of limitations. But the defendants insist that some of the material facts found by the court are not justified by the evidence. The plaintiffs deraign their title through a judgment, execution sale and sheriff's deed in the case of Hibberd v. W. W. Chipman and Aughin-

baugh, and the defendants through a conveyance from said W. W. Chipman to Edward S. Chipman, alleged to have been made prior to the time when the lien of the judgment attached, if there ever was a lien, which is not admitted. The court finds that the judgment was duly rendered and was duly entered of record and duly docketed on the first day of March, 1855; that an execution in due form was issued on the judgment in proper time, which was levied on the land in contest; that the land was sold by the sheriff under the execution to Hibberd, and that no redemption having occurred, the sheriff conveyed the premises to Hibberd by a deed in due form of law on the seventh day of July, 1858. In respect to the deed from W. W. Chipman to Edward S. Chipman, the court finds that on the sixth day of January, 1855, W. W. Chipman signed and sealed a paper purporting to be a deed of grant, bargain and sale to Edward S. Chipman, which purported to convey the land in contest, and on the same day acknowledged the same in due form of law before a justice of the peace, and thereupon left the deed with the justice until it was afterward handed to Aughinbaugh; that the consideration mentioned in the deed is five thousand dollars and other valuable considerations, but in fact nothing whatever was paid as a consideration; but at the time of making the deed W. W. Chipman was indebted to Edward S. Chipman; that when the deed was deposited with the justice, Edward S. Chipman was a resident of the state of Ohio and had been such resident for six months previously; and had no knowledge of the making of the conveyance then nor afterward, until after the thirtieth day of June, 1855, nor was the deed delivered to him until after the last-named day, nor was it ever delivered before that time to any person authorized by him to receive it, nor did he ever before said time assent to said conveyance. As a conclusion of law, the court holds the deed to be void for want of a valid delivery, as against the title acquired by Hibberd at the execution sale. The findings in respect to the judgment, execution sale and sheriff's deed are assailed on several grounds. It is claimed, first, that the judgment was not duly docketed in accordance with the statute, so as to create a lien; second, that the sheriff's deed had the effect in law to convey only such title as W. W. Chipman had on the first day of March, 1856, which was long subsequent to the time when the deed from

W. W. Chipman to E. S. Chipman took effect, and that, therefore, the sheriff's deed conveyed no title. We shall discuss these points in the order in which they are stated.

Section 204 of the Practice Act provides that immediately after filing a judgment-roll the clerk shall make the proper entries of the judgment, under appropriate heads, in the docket kept by him; and from the time the judgment is docketed it shall become a lien on all the real property of the judgment debtor in the county owned by him at the time, or which he may afterward acquire, until the lien expires.

Section 205 provides that the docket mentioned in section 204 shall be a book kept by the clerk in his office, with each page divided into eight columns and headed as follows:

"Judgment debtors; judgment creditors; judgment; time of entry; where entered in judgment book; appeals when taken; judgment of appellate court; satisfaction of judgment, when entered. If the judgment be for the recovery of money or damages, the amount shall be stated under the head of judgment; if the judgment be for any other relief, a memorandum of the general character of the relief granted shall be stated. The names of the defendants shall be entered in alphabetical order."

The judgment docket which was put in evidence was divided into appropriate headings as required by the statute, and under the heading of "judgment debtors" were only the words "Chipman & Aughinbaugh," omitting the Christian name of each. Under the heading of "judgment" was the following: "$8,600. Costs $536.35. Restitution of lands." Under the heading of "where entered in judgment book" were "A, pages 169, 170." It is objected that this docketing was fatally defective, because it omits the Christian names of the judgment debtors. We do not understand the proof as showing that the docket was not alphabetically arranged, or that the name of "Chipman" does not appear in its proper place in alphabetical order. The objection is that his Christian name is omitted. The sole purpose of the judgment docket is to furnish a record which may be conveniently referred to by those who are interested in lands on which a lien may be supposed to have attached. Purchasers, mortgagees or others about to acquire an interest in or a lien upon lands require to have some reliable record of judgment liens to which they may refer

for information; and in order to determine the priority of successive liens, it is necessary there should be a record of them from the date of which they shall take effect. The sole purpose of sections 204 and 205 was to provide this record; and it would be an over-rigid construction of the act to hold that every slight departure from the strict letter of the statute vitiated the lien. If there is a substantial compliance with the act, we think it is sufficient. The title of the plaintiffs under the judgment comes through Chipman and not through Aughinbaugh, and as the name of "Chipman" appears at its proper place in the docket under the heading of "judgment debtors," and as the docket refers to the proper judgment book and page in which the judgment was recorded, no one could well have been prejudiced or misled by the omission of the Christian name. We think the statute was substantially complied with, and that the docketing was sufficient to create a lien as against Chipman.

The execution under which the land was sold to Hibberd directs the sheriff, in default of personalty, to make the amount out of the real property of the defendants belonging to them on the day when the judgment was docketed (March 1, 1855), or at any time thereafter; and the sheriff's deed recites that he levied upon and sold to Hibberd all the right, title and interest which the judgment debtors had in and to the land in contest on the first day of March, 1855. The defendants put in evidence, against the plaintiffs' objection, the advertisement of the sale by the sheriff, the certificate of sale, and the return on the execution, in all of which there are recitals to the effect that the interest of the judgment debtors which was levied upon and sold was the interest which they held on the first day of March, 1856, or afterward.

On this showing they claim that the deed was operative in law to convey only the interest which Chipman had on the last-named day, and that his title having, in the meantime, passed under his deed to E. S. Chipman, the plaintiffs acquired nothing by the sheriff's deed.

The title of a purchaser of real estate at a sheriff's sale does not depend upon and is not affected by the advertisement or the return of the officer to the writ. The title rests upon the judgment, execution, sale, and deed, and is not impaired by any defect, omission or false recital in the return or by his

failure to make any return: Cloud v. El Dorado Co., 12 Cal. 128, 73 Am. Dec. 526; Clark v. Lockwood, 21 Cal. 220. And in Hihn v. Peck, 30 Cal. 280, we hold that the recitals in the deed are sufficient to prove the sale, even if the return to the execution does not recite a sale. In this case the judgment was docketed and became a lien on the 1st of March, 1855. The execution directed the sheriff to sell whatever interest the defendants in execution had on that day, and it was his duty to obey the mandate of the writ. He recites in his deed that he did obey it, by selling that interest, and the presumption is that by mistake the figures "1856" were inadvertently inserted in the advertisement, certificate and return, instead of "1855." The sale was made in October, 1856; and such clerical errors frequently occur from the force of habit, by inserting the date as of the current year which the party is accustomed to write instead of a prior year. The proof offered by the defendants was not sufficient to overcome the recitals in the deed under all the facts of the case; and we express no opinion on the point whether it was competent to impeach the deed by proof of that character.

The next point of the defendants is that the deed from W. W. Chipman to E. S. Chipman was a valid and operative conveyance, and took effect as such before the lien of the judgment in favor of Hibberd attached: The facts attending the execution and alleged delivery of this deed are found by the court, and we think correctly found, upon the evidence. Certainly there was evidence strongly tending to establish the facts as found, and if there was any discrepancy between the witnesses, it was for the court below to decide upon their credibility; and we see no reason to disturb the findings on this point.

But assuming the facts to be as found, do they establish a delivery of the deed prior to March 1, 1855, when the lien of the Hibberd judgment attached? The argument for the defendants is, that the grantor, W. W. Chipman, being indebted to his brother, E. S. Chipman, this indebtedness was a sufficient consideration to support the deed, and that its execution and delivery first to the justice and afterward by the latter to Aughinbaugh was a delivery to a stranger for the benefit of the grantee, who is presumed to assent to a conveyance for his benefit. That a delivery to a stranger for the use

of the grantee will, in some cases, be a valid delivery, and will take effect by relation from the time of such delivery when afterward accepted by the grantee, admits of no doubt. But in all such cases it must appear that the grantor intended it to take effect as a conveyance, and thereby to part with the title and vest it in the grantee. If a grantor executes and acknowledges a deed, and without any declaration of his purpose puts it in his desk and retains the possession of it, no one will pretend that it is operative as a conveyance without some further act of delivery. So, if he executes it and deposits it with a third person, to be held subject to his order, and he afterward demands and regains the possession of it, there was no delivery, because there was no intention to deliver it or to part with the title: Fitch v. Bunch, 30 Cal. 208. Delivery, as a question of fact, depends more upon the intention of the parties than upon the particular method of fulfilling the intention: Hastings v. Vaughn, 5 Cal. 315. Hence, we have held that if a recorded deed be produced from the custody of a stranger to the title, the fact of recording is not evidence of its delivery. But if produced by anyone claiming under the grantor, it is some evidence of that fact: Barr v. Schroeder, 32 Cal. 610. In that event the recording tends to prove that the grantor intended it to take effect as a conveyance, and therefore tends to prove a delivery.

In this case all that appears from the findings is that W. W. Chipman was indebted to E. S. Chipman, who was in the state of Ohio; that he signed and sealed the deed, and left it with the justice before whom it was acknowledged; that afterward it was handed by the justice to Aughinbaugh; that no consideration was paid for the deed; that the grantee had no knowledge of it prior to June 30, 1855, and had authorized no one to receive it. Do these facts establish that when W. W. Chipman acknowledged the deed and left it with the justice he intended it thenceforth to be operative as a conveyance and translative of title as between himself and the grantee? On the other hand, was it not rather the ordinary case of the acknowledgment of a deed, and having it duly certified, so as to have it ready for use on a future emergency or on the happening of a contingency, the instrument in the meantime remaining under the control of the grantor? We attach no importance whatever to the delivery of the deed by the justice to Aughinbaugh.

The former had no authority to deliver it or the latter to receive it, and the validity of the delivery must rest wholly on what was done by W. W. Chipman at the time the deed was acknowledged. We agree with the district court that the facts do not show a valid delivery until after the lien of the Hibberd judgment had attached. Besides, it is well settled that a title by relation cannot override an intervening conveyance or encumbrance acquired in good faith; and even if the delivery to Aughinbaugh for E. S. Chipman was a sufficient delivery, so far as the grantor was concerned, the grantee must accept the deed before it becomes definitely operative as a deed, and such acceptance would not take priority over an intervening conveyance or encumbrance acquired in good faith.

The next points of the defendants are, first, that the grant to Peralta was a complete grant in fee, which did not require confirmation by the United States authorities; or, second, if it did require a confirmation, that it was finally confirmed more than five years before the commencement of the action; and third, that by a written stipulation in the cause, it was admitted that in 1851 Peralta was the owner seised in fee simple and in possession of the land in contest, and that because of these facts the statute of limitations is a bar to the action. We shall consider these points together.

The action was commenced in June, 1861, and is governed by the statute of limitations as amended in 1855. In Richardson v. Williamson, 24 Cal. 289, we held that the sixth section of the act was the only one applicable to actions for the recovery of land, and embraces every case for the recovery of the possession. We also held that the proviso to this section covers every case of title derived from the Spanish or Mexican governments. This proviso is in the following words: "Provided however that an action may be maintained by a party, claiming such real estate or the possession thereof, under title derived from the Spanish or Mexican governments, or the authorities thereof, if such action be commenced within five years from the time of the final confirmation of such title, by the government of the United States or its legally constituted authorities."

In construing this proviso this court has repeatedly decided that the term, "final confirmation by the government of the United States," as used in the act, includes the issuance of the

36

patent, and that when the title is derived from the Mexican or Spanish government, the statute does not begin to run until the patent issues: Johnson v. Van Dyke, 20 Cal. 225; Reed v. Spicen, 27 Cal. 57; Downer v. Smith, 24 Cal. 114; Fremont v. Seals, 18 Cal. 433; Vassault v. Seitz, 31 Cal. 225. But subsequently, by an act of Congress, it was provided that a final approved survey should have the same force and effect as a patent; and thereupon we have held that the statute commences to run from the time of the final approval of the survey: Mahoney v. Van Winkle, 33 Cal. 448. But to bring the case within the proviso, it is only necessary that the title of the plaintiff shall have been derived from a grant from the Mexican or Spanish government. Whether the grant convey a complete and perfect or only an inchoate title, the statute did not commence to run against it until it was finally confirmed. We could not hold otherwise without disregarding the express letter of the statute. There may be very substantial reasons why a perfect title derived from Spain or Mexico, and which needed no confirmation to establish it, should have been omitted from the proviso; but the legislature has deemed it proper to place all titles derived from those governments, whether perfect or imperfect, on the same footing in respect to the statute of limitations, and we have no power to exempt from its operation a class of title which the legislature has seen fit to include. It appears in this case that the action was commenced within less than four years from the time when the decree of confirmation became final by an abandonment of its appeal by the government of the United States, and there had been no final approved survey under the decree when the action was tried. Nor does the stipulation in the cause to the effect that in October, 1851, Peralta was "the owner seised in fee simple and in possession" of the demanded premises help the defendants. Though he may have been such owner in fee and in possession under a perfect title, it is not denied that his title was derived from Spain or Mexico; and, as we have seen, this fact brings the case fully within the proviso we have quoted. We think the court properly held that the action is not barred by the statute. Nor did the proceedings in the case of Hepburn v. Chipman, put in evidence or offered by the defendants, exhibit any defense to the action. It was an action to foreclose a mortgage on other property than that in

contest here, and there was a judgment of foreclosure with
a personal judgment for any deficiency there might be, which
judgment of foreclosure was duly docketed in 1854, and an
order of sale was issued thereon, which was duly executed,
leaving a large deficiency which was reported by the sheriff.
But the deficiency was not docketed as a personal judgment
against Chipman, or if docketed, not until long after the lien
of the Hibberd judgment had attached. It is well settled in
this court that the docketing of a judgment of foreclosure does
not create a lien for the deficiency on the property of the
judgment debtor, and that to establish such a lien, the defi-
ciency, when ascertained, must be docketed as a personal judg-
ment; and the lien does not commence except from the time
the deficiency is so docketed: Chapin v. Broder, 16 Cal. 403;
Culver v. Rogers, 28 Cal. 520. Under these facts, the title
acquired under the Hibberd judgment was the better title.

In the course of the trial the defendants offered to prove by
the witness Aughinbaugh what W. W. Chipman had said to
him in relation to the deed of E. S. Chipman, and what he had
directed him to do in relation to it just before Aughinbaugh
obtained the deed from the justice, to wit, "to get the deed for
Edward S. Chipman from the said Justice Hamilton, and hold
it for said E. S. Chipman," but the court excluded the testi-
mony on the ground that it was hearsay, immaterial and
irrelevant; and this ruling is assigned as error. At the time
when this testimony was offered and excluded, the witness had
not stated, nor had it otherwise appeared, at what time he
obtained the deed from the justice, nor whether it was before
or after the 1st of March, 1855, when the lien of the Hibberd
judgment attached; nor did the defendants in making the offer
also offer to show that the conversation occurred or that the
deed was obtained by Aughinbaugh prior to March 1, 1855.
As the case then stood, the testimony was clearly incompetent,
unless it was accompanied by an offer to show that the con-
versation occurred prior to March 1, 1855. If it occurred after
that time, and if it be conceded to be competent evidence tend-
ing to prove a delivery (on which point we express no opin-
ion), it is plain the lien of the judgment could not be impaired
by a delivery of the deed after the lien attached. The witness,
it is true, at a subsequent stage of his examination, testified, in
a somewhat equivocal manner, that he received the deed from

the justice, prior to the 22d of February, 1855, but after this testimony the defendants did not renew their offer to prove the conversation with Chipman; and the ruling of the court was clearly correct at the time and under the circumstances under which it was made. If the defendants desired to have a ruling of the court as to the competency of the evidence to prove a delivery, they should either have accompanied the offer with an offer to show that the conversation occurred prior to March 1, 1855, or they should have renewed the offer after the witness had stated that he received the deed prior to March 1st.

When the execution and sheriff's deed under the Hibberd judgment were offered in evidence by the plaintiffs, the defendants objected, on the ground that the execution fatally misdescribes the judgment or rather that it recites a different judgment from the one put in evidence. The judgment was for the restitution of lands, and for rents and profits and the costs of the action. The writ of restitution having been executed, the execution in question was issued for the rents, profits and costs, and the costs of an appeal to the supreme court. It was wholly useless to recite in the execution the judgment for restitution; and it recites enough of the judgment to identify it, which is all that is necessary to uphold an execution sale. In Hunt v. Loucks [38 Cal. 372, 99 Am. Dec. 404], decided at the October term, 1869, we had occasion to discuss fully the subject of variance between the judgment and execution, and that case is decisive of this point.

The only question which remains to be considered relates to the defendants' exceptions to the findings. Several of the exceptions are on the alleged ground that the findings are not supported by or are contrary to the evidence. We have so often decided that this is no ground of exception to findings, and is to be corrected only on a motion for new trial, that we can but express our surprise that counsel continue to bring the question before us.

In respect to the omission or refusal of the court to find certain facts claimed to be material by the defendants, it is sufficient to say that the conclusions already announced in this opinion establish that if the omitted facts had been found in

their favor, and as they claim they ought to have been, it would not have benefited them.   Judgment affirmed.

We concur: Sprague, J.; Temple, J.

Wallace, J., having been of counsel, did not participate in the decision of this case.

RHODES, C. J.—I concur in the judgment, and also in the opinion of Mr. Justice Crockett, except on the point in respect to the admissibility of the testimony of Aughinbaugh to show what was said to him by W. W. Chipman in relation to his deed to E. S. Chipman.   It will be admitted by everyone that the delivery of a deed may be verbal, and that it may be made to a stranger for the grantee.   In order to give effect to the deed, the better opinion is that it is necessary to show its acceptance by the grantee: 2 Wash. on Real Prop. 580.   The defendants were, in my opinion, entitled to prove what the grantor said, in order to show a verbal delivery of the deed to Aughinbaugh for the grantee, without first proving the fact or time of its acceptance by the latter.   Where an ultimate fact is to be established by proof of a series of probative facts, there is no rule of which I am aware requiring proof of the last fact in the series before adducing evidence of the first. The defendants, notwithstanding the exclusion of the evidence of the delivery of the deed, proved that the deed was accepted by the grantee, but after the lien of the Hibberd judgment had attached to the premises in controversy.   The error of the court, therefore, in excluding the evidence was not productive of any injury to the defendants.