## JOHNSON v. VAN DYKE.

THE time fixed by the first section of the Limitation Act of 1855, within which an action may be commenced for the recovery of land under a title derived from the Mexican or Spanish Governments, does not begin to run until the issuance of the patent by the United States Government.

The terms "final confirmation by the Government of the United States," as used in said act, mean the definitive confirmation of the title to certain specifically described premises, and include not only the recognition of the validity of the title by the Judicial Department, but also by the Executive Department, which formerly exercised supervision and control over the location of confirmed Mexican grants.

Until the Act of Congress vesting the supervision and control of surveys of confirmed Mexican grants in the United States District Court, there was no absolute finality to the survey until it had received the approval of the Commissioner of the Land Office, as well as that of the Surveyor General for California; and the only authoritative evidence of such approval was the patent.

APPEAL from the Thirteenth Judicial District.

The facts are stated in the opinion of the Court. The defendant had judgment in the Court below and plaintiff appeals.

*D. W. Perley*, for Appellant.

The question of limitation is disposed of by the ruling of this Court in the case of *Fremont* v. *Seals* (18 Cal. 434). The patent was issued February 19th, 1856. The action was commenced on the twelfth day of November, 1860. Five years had not run; and within that time the plaintiff had a legal seizin by virtue of his patent.

*J. G. McCullough*, for Respondent.

I. Final confirmation in the Limitation Act means the decree of the tribunal under the Act of Congress of March 3d, 1851, finally adjudicating upon and confirming the grant. The tribunal, in this case, was the District Court of the United States, and its final decree was rendered June 27th, 1855. Such adjudication has been by this Court frequently spoken of as "the final decree" and the "final confirmation." (*Waterman* v. *Smith*, 13 Cal. 418; *Boggs* v. *Merced Mining Co.*, 14 Id. 304; *Yount* v. *Howell*, 14 Id. 467; *Natoma Water and Mining Co.*, 14 Id. 548; *Mott* v. *Smith*, 16 Id. 548; *Ely* v. *Frisbie*, 17 Id. 255; *Leese* v. *Clark*, 18 Id. 565.)

And in adjudicating upon this very grant, this Court holds the decree of the District Court of the United States as the final confirmation. (*Boggs* v. *Merced Mining Co.*, 14 Cal. 355; *Fremont* v. *Flower*, 17 Id. 210.)

The respondent, for the purposes of this case, might even admit that final confirmation meant the approved survey which segregates the specific tract and thus perfects the title. (13 Cal. 418; 18 Id. 27; 16 Id. 548.) In *Ballance* v. *Papin*, the title of plaintiff was held imperfect for want of a survey, (19 How. 335) and in *Bryan* v. *Forsyth*, it was held that the same title was perfected by a survey (19 How. 335).

II.     But certainly, " final confirmation" does not mean the issuance of the patent. True, the patent is the last act in a series of proceedings taken for the recognition of the patentee's right to the land it embraces; (*Stark* v. *Barrett*, 15 Cal. 366; *Leese* v. *Clark*, 18 Id. 570; *Teschemacher* v. *Thompson*, 18 Id. 25) but its issuance can have no other or greater effect upon the title than simply to save the parties the necessity of proving anything beyond it, and limit the evidence in the case to matters arising from mesne conveyances under the original grantee. It is, in other words, only conclusive, among other things, of the final confirmation, but not confirmation itself.     (See cases above cited.)

It was only intended as evidence.     (*Fremont* v. *Flower*, above cited.)     Its issuance is a mere ministerial duty, and by a just application of the doctrine of relation, the patent must be regarded as if it had received the signature of the President at the completion of the segregation of the land.     (13 Cal. 419.)     " The essential and substantial acts under the law of 1851, are the confirmation and survey."     (13 Cal. 419.)     The distinction between the " final confirmation" and the patent is recognized in the Act of Congress, (sec. 15) and in referring to the act, this Court also recognizes the distinction by speaking " of the final confirmation and patent." (*Waterman* v. *Smith*, above cited; *Moore* v. *Wilkinson*, 13 Cal. 488.)     This Fremont patent itself refers to the decree of " final confirmation," and it is usual in patents in other cases.     (17 Cal. 212.)

Patents issue to all claimants whose claims have been " finally

Johnson *v.* Van Dyke.

confirmed. (*Fremont* v. *Flower*, and *Leese* v. *Clark*, above cited.) The validity of the grant is settled forever by the decree of final confirmation of the Court, and becomes the law of the case. It cannot again be questioned. "It is a closed question for all time." (*Mott* v. *Smith*, above cited.)

III. The Statute of Limitations is to be construed in reference to the "old law, the evil and the remedy."

Now, while the old law of 1850 was in force, the Supreme Court of this State had decided that an ejectment could not be maintained upon a Mexican grant until final confirmation, and the Legislature stepped in to remedy the evil, and by the proviso of the law of 1855, extended to Mexican claimants the time to five years from the final confirmation; and the effect, under the present decisions of this Court of construing "final confirmation". to mean the issuance of the patent, would be to give claimants under Mexican grants an almost unlimited time within which to bring their actions of ejectment; as a grantee may delay an indefinite time before asking for a patent. (*Landes* v. *Brant*, 10 How. 370; *Willot* v. *Sanford*, 19 Id. 81.)

FIELD, C. J. delivered the opinion of the Court—NORTON, J. concurring.

This is an action of ejectment to recover the possession of certain premises situated in Mariposa county. The plaintiff deraigns title from Fremont, to whom a patent was issued by the United States on the nineteenth of February, 1856. The defendant relies upon an adverse possession founded upon color and claim of title, exclusive of any other right, for the period of five years previous to the commencement of the action; and contends that, under the limitation Act of 1855, the action is barred. That act provides that "no action for the recovery of real property, or for the recovery of the possession thereof, shall be maintained, unless it appear that the plaintiff, his ancestor, predecessor or grantor, was seized or possessed of the premises in question, within five years before the commencement of such action; provided, however, that an action may be maintained by a party claiming such real estate, or the possession thereof, under title derived from the Spanish or Mexican Govern-

Johnson *v.* Van Dyke.

ments, or the authorities thereof, if such action be commenced within five years from the time of the final confirmation of such title by the Government of the United States or its legally constituted authorities." (Session Laws of 1855, chap. 87, sec. 1.) The sent action was commenced on the twelfth of November, 1860, within the meaning of the Statute of Limitations, and the question presented is, whether this was within five years from the time of the final confirmation of the title to the premises in controversy "by the Government of the United States or its legally constituted authorities." The patent to Fremont was issued upon the confirmation of a grant of the former Mexican Government under the Act of Congress of March 3d, 1851. The final confirmation of the claim of Fremont under the grant was entered in the District Court of the United States, pursuant to the mandate of the Supreme Court, on the twenty-seventh of June, 1855 ; and the position of the respondent is that the Act of this State of 1855 commenced running from that date. We do not thus construe the Act of 1855. The final confirmation to which the Act of Congress refers is the final adjudication of the tribunals of the United States upon the validity of the title of the claimant under the Mexican grant. The survey and the patent follow such adjudication. Where the grant is of a certain quantity without specific boundaries, lying within an area of larger extent, as was the grant under which Fremont claimed, the survey is essential to give precision to the title and attach it to any particular tract. Until the survey is made and approved, the title in such case is only confirmed generally ; it is not definitively confirmed to any particular premises. (*Waterman* v. *Smith*, 13 Cal. 373.) The confirmation to which the Act of this State refers is the definitive confirmation. It is the recognition of the validity of the title to certain specifically described premises by the Government—that is, by the Executive Department, which formerly exercised supervision and control over the subject of the location of confirmed Mexican grants, as well as by the Judicial Department—and supposes not merely that the tribunals of the United States have finally acted, but that the subsequent survey has been made and approved. Such recognition, until the late Act of Congress vesting the supervision and control of surveys in the United States District

Johnson *v.* Van Dyke.

Court, found its authoritative expression only in the patent.    Until then, it was generally supposed by the profession that the approval of the Surveyor General of the United States for California gave validity and conclusiveness to the survey, and such was our opinion when the case of *Waterman* v. *Smith* was decided.    The subsequent decision of the Supreme Court of the United States, in *Castro* v. *Hendricks*, (23 How. 430) determined otherwise, and that the Commissioner of the Land Office exercised a supervision and control over the acts of surbordinate officers charged with making surveys.    There was then no absolute finality to the survey of the claim confirmed to Fremont, until it had received the approval of that officer, as well as the approval of the Surveyor General for California.    His approval was followed and evidenced only by the patent.    Until then it could not be said that the title was by the Government of the United States, or its legally constituted authorities, finally confirmed to the premises in controversy.

Such being our construction of the Act of 1855, the conclusion follows that the act only began to run against the plaintiff from the issuance of the patent, and that being within five years previous to the commencement of the action, the plaintiff was entitled to judgment in his favor upon the facts found by the Court.

The judgment must be reversed, and the Court below directed to enter judgment for the plaintiff for the premises in controversy ; and it is so ordered.