## TYLER BEACH AND JAMES A. CLAYTON *v*. AUGUST GABRIEL *et als*.

LOT IN A PUBELO.—An ordinance of an Ayuntamiento directing the proper functionary to make a grant of a lot to a person named therein, if he should find that no other person had a better right thereto, does not pass any title to the person named.

STATUTE OF LIMITATIONS.—The Statute of Limitations does not begin to run in relation to pueblo lands until a patent has been issued by the United States.

APPEAL from the District Court, Third Judicial District, Santa Clara County.

Action to recover possession of a lot in the City of San José and within the boundaries of the former Pueblo de San José de Guadalupe. The plaintiffs had by mesne conveyances the title which Maria Rufina Garcia acquired by a grant made by James C. Conroy, First Alcalde of the Pueblo, on the 26th day of December, 1849, of which the following is a copy: .

"WHEREAS, Maria Rufina Garcia has applied to this office for a title to the land left her by her father, Francisco Garcia, she having neglected to obtain one until this date:

"This is to certify, that I, James C. Conroy, First Alcalde of the Pueblo de San José de Guadalupe, on the part of said pueblo, for and in consideration of the sum of what is specified by law, to me in hand paid by the said Maria Rufina Garcia, hath sold, transferred, and made over to the said Maria Rufina Garcia all that messuage of land left her by her father, and declared to be all that land fronting on the callajon on

the north; bounded on the east by the land of James W. Weeks, Esq., and on the south by the land of Juan Sepulvada, and on the west by the Rio.

"To have and to hold the same, with all the rights and privileges thereunto belonging, to her and her assigns forever.

"In witness whereof I have hereunto set my hand and seal, this twenty-second day of December, 1849."

                                  "JAMES C. CONROY,
                        "First Alcalde District San José."

The defendants had the title acquired by Maria Merced Avila under the following proceedings of the Town Council of the pueblo on the first day of December, 1849 :

"A memorial was presented by Don José Arnaz in favor of Maria Merced Avila, in petition of a piece of land containing varas unknown, situated west of the lands of Rufina Garcia and James W. Weeks, and in conformity to petition, it was unanimously ordained that a title be extended to the person interested, conditioned and provided that if no other may show forth a better right.

                        "ANTONIO MA. PICO, President.
"JAMES W. WEEKS, Secretary."

Defendants and their grantors had been in possession of demanded premises more than five years.

The Court below gave judgment for defendants, and plaintiffs appealed.

*Peckham & Payne,* for Appellants.

Under the law, as it stood when these proceedings were had, the Alcalde was a member of the Ayuntamiento, and was its presiding officer in the absence of the Prefect and Sub-Prefect. (See Appendix to Debates in California Constitutional Convention, page 31, Sec. 5, Arts. 3, 4, 5, 6, and 7, also page 33, Sec. 6, Art. 9.)

The Prefect had the power, independent of the Ayuntamiento, to regulate the distribution of common lands, but this

only extended to the temporary use and occupation; he could not sell them or grant the fee. (Id., p. 30, Art. 14, and note.) The municipal lands the Town Council could sell. (Id.) In this case, Pico did not act as Prefect, but he signed as President of the Town Council or Ayuntamiento. His independent power as Prefect was not exercised, or attempted to be. The Alcalde was the executive officer of the Ayuntamiento, and as such, it was his duty to make grants of land sold by them. (*Cohas* v. *Raisin*, 3 Cal. 443; *Hart* v. *Burnett*, 15 Cal. 530.) And the Court must take notice that nearly all grants of land in pueblos were made by the Alcaldes, professing to act by virtue of power conferred on them by the Ayuntamientos. (*Cohas* v. *Raisin*, 3 Cal. 443.) This, we believe, is the first case that has come to the attention of the Court in which a grant by the Ayuntamiento independent of the Alcalde has been sought to be established.

Such being the case, it should appear clearly that the Ayuntamiento in the ordinance before the Court intended that it should operate as a grant *in presenti*, independent of the Alcalde, before the Court should give it that effect.

Another circumstance should be looked at, and that is, the law that when a party applied for a grant a sum of money was to be paid. (*Cohas* v. *Raisin*, 3 Cal. 443.)

It is evident to our minds that the ordinance was nothing but a direction to the Alcalde to grant a title to the interested party, provided no one showed a better right to the same. Our construction of this ordinance was the cotemporaneous construction placed upon it by the Alcalde, who, we have seen, was a member of the Ayuntamiento, and who, it is fair to presume, voted for it, as it was passed unanimously.

Every presumption is in favor of the validity of the grant by the Alcalde; even a subsequent ordinance of the Ayunta miento will be presumed if necessary. (*Reynolds* v. *West*, 1 Cal. 322; *Cohas* v. *Raisin*, 3 Cal. 443; *Welch* v. *Sullivan*, 8 Cal. 165; *Hart* v. *Burnett*, 15 Cal. 530.)

*Frederick Hall*, for Respondents.

I contend that the words in the ordinance, "conditioned and provided that if no other may show forth a better right," are merely declaratory of what the law is; and if they had not been inserted, the rights of the party would not have been changed. If any other person had a prior or better right, whenever they could show it in a Court of judicature, they would obtain a judgment for the premises; that the recital in the grant made by the Alcalde is no evidence against the respondents; that, so far as this case is concerned, the naked grant, stripped of the recital, is all that the Court can consider. Appellants' title is, then, a subsequently acquired one.

The Court cannot *presume* that the Alcalde had the consent of the Ayuntamiento to make the grant to Rufina Garcia. There can be no presumption against a given fact. The fact is, that the Ayuntamiento had given their consent to another, namely, Avila; and before it can appear that the Ayuntamiento gave their consent subsequently to another, that fact must be affirmatively shown.

Suppose the ordinance under which Maria Avila claims the premises is a "conditional order," what legal proof is there that any condition arose which could divest her of her vested rights? I submit, not the slightest.

Granting for the sake of the argument that it was a conditional order, what proof is there that Garcia showed a better right? Avila was entitled to be heard on that question. Did she ever have such a hearing?

The Alcalde was not authorized by the law of the land to decide whether Avila or Garcia was entitled to the premises. That would have been exercising judicial functions—passing upon the *title* to property, of which Courts of First Instance only could take original cognizance. It was the duty of the Alcalde to have reported to the Ayuntamiento that another party claimed it, if such were the fact. The so-called conditional order in favor of Avila did not authorize the Alcalde to grant the premises to Garcia. He was only the executive

officer of the pueblo. The granting power was in the Ayuntamiento. The Alcalde could only execute grants in accordance with their will and consent. ·The import of the said "order" was not, "that if Avila is not entitled to it, Garcia is." It must appear by affirmative proof, or by facts from which the Court will presume that the Ayuntamiento gave their consent that Garcia should have the title, before the appellants can prevail. They are plaintiffs; and before they can sustain an action of ejectment, they must show a perfect title. They never were in possession. As I have before said, there can be no presumption in this case in favor of Garcia, because it affirmatively appears that the Ayuntamiento gave their consent that Avila should have the title.


By the Court, SANDERSON, J.

The ordinance of the 1st of December, 1849, was not the act of Antonio Maria Pico as Prefect, but was, as it purports, the act of the Ayuntamiento, attested by Antonio Maria· Pico as President of that body, and James W. Weeks as Secretary. Nor can it be construed to be a grant by the Ayuntamiento of the land in question to Maria Merced de Avila. It is. not framed in the language of a grant, either under the Mexican or American system. It is manifestly a mere conditional order or direction on the part of the Ayuntamiento to the proper functionary to the effect that a title to or grant of the land in question be made to Maria Merced de Avila, provided it should appear that no one else had a better right thereto. It is not only not a grant, but it is manifest from the language employed that it was not intended to be. Although made in the English language, it is manifestly fashioned upon the style or mode of expression employed in the Spanish. The word "extended" is used in the sense of the Spanish word "extender," which means, when used in the connection under consideration, "to commit to writing at length," (Spanish and English Dictionary, by Velasquez.) The ordinance being a mere order or direction to the proper functionary to make a

grant to Maria Merced de Avila, if he should find that no other person had a better right thereto, no title passed thereby.

The point to the effect that the action is barred by the Statute of Limitations is not well made. It was held in *Johnson* v. *Van Dyke*, 20 Cal. 225, that the statute does not begin to run until the patent has been issued by the United States Government. It appears from the finding that the patent for the land of which the land in controversy is a part had not been issued at the time this action was brought.

Judgment reversed and Court below directed to enter a judgment for the plaintiffs.

Mr. Justice RHODES, being disqualified, did not participate in the decision of this case.