[No. 2,251.]

## FRANCISCO SABICHI *v.* MEREJILDO AGUILAR, JOSE LA SUZ VALENZUELA, VICENTE RUIZ, AND GEORGE LEHMAN.

STATUTE OF LIMITATIONS UNDER ACT OF 1855.—The final confirmation of a Mexican grant, so as to set the Statute of Limitations in motion, under the Act of 1855, passed by the Legislature of California, was the issuance of a patent to the grantee.

IDEM.—Under the Act of 1863, amending the Statute of Limitations of 1855 (Laws 1863, p. 327), the final confirmation which set the Statute of Limitations in motion was the final confirmation of a survey by the Courts of the United States provided for in the Act of Congress of June 14th, 1860, or the issuance of a patent.

IDEM.—The approval of a survey of a Mexican grant, by the Surveyor General alone, was not final, so as to set the Statute of Limitations in motion.

APPEAL from the District Court of the Seventeenth Judicial District, County of Los Angeles.

This was an action of ejectment, commenced April 13th, 1868, for a lot in the City of Los Angeles. Defendants answered, setting up the Statute of Limitations and adverse possession thereunder since 1856. The cause was tried, without a jury, in September, 1869, and the Court below found as facts the holding by the plaintiff of the pueblo title, and the various circumstances relating to its confirmation, survey, and approval of survey, as set forth in the opinion of Justice WALLACE, and concluded as follows:

"8. That about the month of July, 1867, an application was made on the part of the authorities of the City of Los Angeles to J. Wilson, United States Commissioner of the General Land Office, at Washington, for the issuance of a patent for said city lands, to which said application he replied: 'That the statute does not provide for the issuing of patents for this class of claims, and without authority of law it cannot of course be done. The confirmation under the statute, together with the plat of survey, constitute the evidence of title.' And he, therefore, declined to issue any patent, and no further proceedings have been taken since."

As a conclusion of law the Court found that plaintiff's cause of action was barred by the Statute of Limitations, and rendered judgment for defendants. The plaintiff appealed.

*Glassell, Chapman & Smith,* for Appellant.

This action was commenced within five years from the passage of our Limitation Act of April 18th, 1863. His right to recover was therefore not barred, unless there was

a final confirmation of the city title previous to the passage of that Act. The statute defines "final confirmation" to be "the patent issued by the Government of the United States, or the final determination of the official survey," under the Act of Congress of June 14th, 1860. The Court below held that the publication of the notice of approval of survey by the United States Surveyor General constituted a "final determination of the official survey," under the Act of 1860, and hence its conclusion that the action was barred. It held that the Act of 1860 was retrospective in its operation, and required the Surveyor General to publish notice of his approval of all surveys in his office—as well those already made and approved, as those thereafter to be made. And thus this survey, although already finally determined under the Act of 1851, became again finally determined under the Act of 1860. Such a construction is plainly erroneous. The Act of 1860, with the exceptions specified in section five, did not apply to surveys made and approved before its passage. (12 U. S. Stats. at Large, 33; *United States* v. *Sepulveda*, 1 Wall. 104.) The Surveyor General was neither required nor authorized by it to take any steps whatever in regard to such surveys. His proceedings under it, in regard to the survey in question, were therefore simply null and void, and the case stands precisely as if no such proceedings had been taken.

The Court below seemed to attach some importance to the opinion of the Commissioner of the Land Office, that, in the class of cases to which this belongs, the law gave him no authority to issue a patent. If this were so, it would only prove that under the law there could never be a "final confirmation" of the lands of the city. It would not alter the statute which provides that the time should only commence running from the final confirmation, or the date of the statute. It is plain, however, that the Commissioner was mistaken, as the law required him to issue a patent in every case. (1

Brightly's Dig. 113, Sec. 46; 12 U. S. Stats. at Large, 33, Sec. 5.) And this view of the case, we understand, has been finally adopted by the Land Office.

*Howard & Sepulveda,* for Respondents.

There is nothing in the case to show that the action of the Surveyor General in the approval of the survey was final, prior to the passage of the Act of 1860. Inasmuch as he acted on the survey under the law of 1860, the presumption is that it remained among the unfinished surveys and business when that Act went into operation. It is very probable that, after the indorsement, it remained in his office, on objections, and not remitted to the General Land Office, and came within the operation of the Act of 1860. That is the presumption, and it is not rebutted by the proof of the plaintiff. It was within the jurisdiction of the Surveyor General to decide whether the survey came under the Act of 1860. (12 U. S. Stats. at Large, 35.) His decision cannot be attacked collaterally. (6 Pet. 739.) It binds the government, the city, and those claiming under the city. (*Menard* v. *Massey,* 8 How. 293.) In order to show that the survey was final, it would be incumbent on the plaintiff to prove that at the date of the passage of the Act of 1860 no further act remained to be performed in relation to the survey. So long, however, as it remained in the office of the Surveyor General it was under his control. It must be held as a then "pending survey," in favor of the presumption created by the act of the officer and the findings of the Court below.

The case of *United States* v. *Sepulveda,* 1 Wallace, 104, does not apply, because it there appeared affirmatively that the survey was complete under the Act of 1851.

The Commissioner of the General Land Office, to whom the decision of the question was confided by law, held that in this class of claims the decree and survey introduced in evidence was all the patent authorized by law. By the Act

of July 4th, 1836, that officer has control of "the issuing of patents for all grants of land, under the authority of the Government of the United States, and Spanish grants under the President of the United States. (1 Brightly's Dig. 462; 18 How. 43; 19 How. 202; 9 How. 449.) The decision of the Commissioner, that a patent could not issue in the case, was a valid decision, which could not be attacked collaterally, even if he could be compelled by mandamus to act, which is doubtful, as the case is one in which the officer must exercise discretion. (*Decatur* v. *Paulding*, 14 Pet. 497; 17 How. 225.) If the decision of the Commissioner is correct that the decree of confirmation and the survey are the patent, and the counsel for plaintiff are correct, that the survey was under the Act of 1851, then the confirmation was final on July 2d, 1859.

The Act of 1860, section five, gives to a survey, approved under the Act, "the same effect and validity in law as if a patent for the land so surveyed had been issued by the United States." It cannot be doubted that it was the intention of this Act, as well as that of the Legislature of 1863, to give to an approved survey all the force of a patent. After the survey there was no reason why the owner should delay his action of ejectment.

By the Court, WALLACE, J.:

The plaintiff deraigns title to the premises in controversy (a lot in the City of Los Angeles) by grant from the municipal authorities; and the only question presented upon this appeal is the effect of the Statute of Limitations pleaded by the defendant in bar of the action.

The claim of the city as successor of the Pueblo of Los Angeles, including the lot in controversy, was duly confirmed under the Act of Congress of March 3d, 1851, pro-

viding for the settlement of private land claims in California; but no patent pursuant to such confirmation has been issued by the authorities of the United States. The defendants have been in possession of the premises ever since the year 1856. In September, 1858, a survey in the field was made of the lands confirmed, and in July, 1859, this survey, and the plat thereof, were approved in due form by the Surveyor General of the United States for the time being; and the plat thus approved by him remained in his office, subject to inspection, until the month of November, 1860.

In the meantime, on the 14th day of June, 1860, Congress passed the Act defining and regulating the jurisdiction of the District Courts of the United States in regard to the survey and location of confirmed private land claims in this State (12 U. S. Stats. at Large, 33); and in the months of September and October next succeeding its passage the Surveyor General, *ex mero motu,* and in assumed compliance with its provisions, published in the newspapers a notice of the fact of survey made, and its approval by him, which publication was conducted in the manner prescribed by the first section of the Act. The action having been commenced on the 13th day of April, 1868, and the defendants having pleaded the Statute of Limitations upon the foregoing facts appearing, the Court below rendered judgment in their favor.

The title of the plaintiff is derived from the Mexican Government, and it will be seen by reference to the Statute of Limitations, as amended in 1855, p. 109, that under its provisions he was at liberty to assert that title by an action " commenced within five years from the time of final confirmation of such title by the Government of the United States, or its legally constituted authorities."

*Final confirmation* within the intent of that statute (until the passage of the Act of Congress of January 14th, 1860, already referred to) was held by this Court to be "the

issuance of the patent," and not the approval by the Surveyor General of a survey made by himself. (*Johnson* v. *Van Dyke*, 20 Cal. 225; *Davis* v. *Davis*, 26 Cal. 46; *Beach* v. *Gabriel*, 29 Cal. 580.)

This construction of the Act of 1855 necessarily followed upon the views then recently announced by the Supreme Court of the United States in *Castro* v. *Hendricks*, 23 How. 438, where it was substantially held that over a survey, which had not itself been the subject of judicial proceedings to determine its correctness, but had merely been approved by the Surveyor General, the Commissioner of the General Land Office had supervisory authority. Of course this authority would terminate only with the issuance of the patent itself; for until then the duty of the Commissioner would continue, and his authority to see that the location, as actually made, was in conformity to the decree of confirmation as rendered—and until then the survey, as made and approved by the subordinate, the Surveyor General, so far from being definitely final, must necessarily be *in fieri* merely.

Congress having, however, passed the Act of June 14th, 1860, providing for the final determination of surveys by judicial proceedings before the Courts of the United States, the amendatory Statute of Limitations of the State, passed in 1863 (p. 327, Sec. 7), thereupon enacted that final confirmation should be the *patent*, or the *final determination* of the official survey under the provisions of *that Act of Congress.*

That a survey, if become final through judicial proceedings, under the Act of Congress of 1860, amounted to *final confirmation*, even under the Statute of Limitations of 1855, had been distinctly intimated here, in the year 1862, in the case of *Johnson* v. *Van Dyke*, supra, and the statute of the following year (1863), in this respect only, embodied in terms a rule already practically reached by this Court upon

construction of the Act of April 11th, 1855. In *Mahoney* v. *Van Winkle*, 33 Cal. 448, it was held that in all cases in which the survey fell within the provisions of the Act of Congress of 1860, the *final confirmation* mentioned in the statute of 1855 "must be held to be the final judgment of the Courts on the question of location, and the date of such judgment, or the time when it becomes final, must be the *terminus a quo* of the statute period."

But I think it clear that the survey in question was not one of that character. It is found as a fact by the Court below that it was made pursuant to a decree of confirmation, rendered by the Board of United States Land Commissioners, and that the Surveyor General approved it on the 2d day of July, 1859.

As thus approved by that officer it was subject only to the supervision of the Commissioner of the General Land Office at Washington. In *United States* v. *Sepulveda*, 1 Wallace, 104, it was held by the Supreme Court of the United States that a like survey, approved by the Surveyor General prior to the passage of the Act of June 14th, 1860, was not subject to revision by the District Court of the United States under that Act, unless at the time of the passage of the Act such survey was already returned into the District Court, or proceedings to contest it were already pending there. In that case, upon the suggestion of the District Attorney, to the effect that the survey as made did not conform to the final decree of confirmation rendered by the Board, an order had been made by the District Court of the United States that the Surveyor General return into Court for examination the plat of survey which he had approved. The return was made accordingly, and, upon hearing the objections, it was determined that the survey, as made and approved by the Surveyor General, was erroneous, and thereupon certain corrections, in that respect, were ordered by the Court. Upon appeal, however, the

decree was reversed, and the District Court directed to dis-
miss the proceedings for want of jurisdiction.    That case is,
upon all points involved, conclusive of this—even had the
District Court here, as there, attempted an adjudication of
the survey, which, however, it did not.    For in that case,
and in this as well, the decree upon which the survey was
founded was one rendered by the Board of Land Commis-
sioners, and not by the District Court.    The survey itself,
there as well as here, had been approved by the Surveyor
General at the date of the passage of the Act of Congress,
and was not, at that time, already returned into the District
Court, nor were any proceedings concerning it then pending
before that tribunal.    The publication of the notice by the
Surveyor General, made in the case at bar, being wholly
unauthorized by the Act, was, therefore, nugatory.    The
purpose of such a notice, when given in a proper case, is
merely to initiate judicial proceedings looking to a decree
concerning the validity of the particular survey to which
the notice refers.    It necessarily presupposes a case in which
a decree may be rendered definitively determining the sur-
vey to be valid, and thereafter not open to question.    Here,
however, had any party in interest, pursuant to the notice
given, sought to intervene for the protection of his supposed
interest, the Court could have made no valid order in the
premises, except an order dismissing the proceedings for
want of jurisdiction to entertain them.

The approval of the official survey in this case was not a
determination of its validity had under the Act of Congress
of 1860.    It was not the judicial determination provided by
that Act, but was one made by the Surveyor General in the
exercise of the quasi-judicial authority vested in him by the
antecedent Acts of Congress, and subject to the Commis-
sioner of the General Land Office at Washington; and the
lapse of five years, after the approval so made by the Sur-

veyor General, is ineffectual to bar a recovery by the plaintiff.

The judgment must, therefore, be reversed, and the cause remanded, with directions to render judgment for plaintiff upon the findings.

And it is so ordered.

RHODES, J., concurring:

Ejectment to recover the possession of a lot in the City of Los Angeles. The plaintiff claims title under a grant made by the proper municipal authorities of the city, and such title, it is assumed by both parties, was sufficient to enable the person holding it to maintain ejectment. The title of the city was finally confirmed in 1858. No patent has issued to the city, but the survey was approved by the Surveyor General, July 2d, 1859, and since that time has remained in his office and has not been returned into the District Court, nor have proceedings been initiated to contest it. The defendants and their grantors have been in the adverse possession since 1856. The action was commenced April 13th, 1868. The Court below held that the action was barred by the Statute of Limitations as amended April 18th, 1863.

The statute had not commenced to run in this case when the Act of 1863 took effect. It was held in *Johnson* v. *Vandyke*, 20 Cal. 225; *Davis* v. *Davis*, 26 Cal. 46; and *Beach* v. *Gabriel*, 29 Cal. 580, that "final confirmation," within the meaning of the Act of 1855 amendatory of the Statute of Limitations, was the issuing of the patent. As no patent had issued to the city, the time had not commenced to run under the Act of 1855 against the plaintiff's grantor when the Act of 1863 took effect.

The seventh section of the statute of 1863 defined "final confirmation" for the purposes of that Act alone, and was not intended to have a retroactive effect, so as to set the

statute running by construction.   And it may be added that an approval of a survey which became final in any other mode than under the provisions of the Act of Congress of June 14th, 1860, will not come within the provisions of section seven of the Act of 1863.

This action having been commenced less than five years after the Act of 1863 took effect, and no portion of the time provided by the statute of 1855 for the commencement of actions having run when the Act of 1863 took effect, the action was not barred by the Statute of Limitations.

The appeal is taken from the judgment.   The findings show that the plaintiff is entitled to recover the possession of the premises in suit.

I am of the opinion that the judgment should be reversed, and cause remanded, with directions to enter judgment, on the findings of fact, for the plaintiff.

Mr. Justice CROCKETT concurred in the opinion of Mr. Justice WALLACE.

Mr. Justice NILES concurred in the opinion of Mr. Justice RHODES.

Mr. Chief Justice SPRAGUE did not participate in the decision of the case.