[No. 3617.]

## JACOB MORRIS and CHARLES PRAGER v. EULOGIO F. De CELIS, Administrator of the Estate of EULOGIO De CELIS, Deceased.

Title by Statute of Limitations.—An adverse possession of the defendant in ejectment, if continued for five years, creates a *title* in him to the land so possessed.

Specification in Statement.—If the statement of the plaintiff on motion for a new trial, specifies as a reason why a new trial should be granted, that "there is no evidence to show that the title ever has been in the defendant," it is sufficient to enable the Court to review the evidence as to the defendant's title by adverse possession.

Prima Facie Evidence.—The fact that the mayor of a city has no knowledge of the issuance by the United States of a patent for the pueblo lands of the city, is *prima facie* evidence that no such patent has been issued.

Limitation of Action as to Spanish Grants. — The owners of grants of land by Mexico or Spain, which grants had not been finally confirmed by the United States more than five years before the passage of the act of April 18, 1863, amending the Statute of Limitations, had five years after the passage of said act of 1863 in which to commence actions for the recovery of the same.

Final Confirmation of Mexican Grant.—After the passage of the act of Congress of June 14, 1860, giving the United States District Court authority over surveys, a judicial approval of a survey was a final confirmation within the intent of the sixth section of the Statute of Limitations of this State, as amended in 1855.

Statute of Limitations as to Mexican Grant.—The party claiming title under a Mexican grant, if the other relies on five years' adverse posses-

sion, must show that the patent has not issued for the same, or that the official survey has not been approved by the District Court under the act of Congress of June 14, 1860.

SURVEY OF MEXICAN GRANT.—If the final confirmation of a Mexican grant was made by the Board of United States Land Commissioners, and not by the District Court, the District Court had no jurisdiction under the act of Congress of June 14, 1860, to adjudicate on the survey, unless the survey had been returned into Court and remained pending there at the time of the passage of the act.

BURDEN OF PROOF IN EJECTMENT FOR MEXICAN GRANT.—If, in ejectment to recover land granted by Mexico, it appears that the final confirmation was made by the Board of Land Commissioners, it devolves on the defendant, if he claims under five years' adverse possession, to show that at the time of the passage of the act of Congress of June 14, 1860, the survey was pending in the District Court for confirmation, in order to rebut the presumption that the survey had not been finally confirmed by the District Court.

APPEAL from the District Court, Seventeenth Judicial District, County of Los Angeles.

Ejectment to recover a tract of land in the city of Los Angeles, being portion of the pueblo lands belonging to said city. The plaintiff averred in his complaint that his title was derived by grant from the Mexican Government, and that the grant had not been confirmed by the Government of the United States or the legally constituted authorities thereof. The defendant plead the Statute of Limitations as one defense.

The court submitted the following questions to the jury:

1. Is the land described in the complaint situate within the city limits of Los Angeles city?

2. Has the deceased, whose estate the defendant represents, been in the adverse and exclusive occupation of said lands, not disclaimed by his answer, for more than five years immediately before this action was commenced?

3. Are the following facts proven, to wit:

Confirmation of the claim of said city for her lands (embracing that in question) by the U. S. Board of Land Commissioners, dated February 5, 1856.

Also, dismissal of appeal from said confirmations, made February 2, 1858, by U. S. District Court.

Also, that so far as the present mayor of said city knows, no patent for said city lands has ever been issued.

4. Are there any other facts proven in regard to the confirmation, or survey, or patent of the said city lands, by the authorities of the Government of the United States?

The jury returned the following verdict:

"We, the jurors in the case of *Jacob Morris et al.* v. *Eulogio Celis et al.*, answer to first question submitted by the court, yes; to question number two, yes; to question number three, yes; to question number four, no other facts have been proven.

"We, of the jury, find for the defendants."

The plaintiff moved for a new trial, and filed a statement in support of it. The court denied the motion. The plaintiff appealed from the order.

The other facts are stated in the opinions.

*Thom & Ross*, for the Appellants.

1. The act of our Legislature, passed in 1855, contains a provision that in case of titles derived from the Spanish or Mexican Government, the limitation shall run from the final confirmation of the grant. (Act of April 11, 1855, p. 109 of Acts of 1855.)

This "final confirmation" was construed to mean the issuance of the patent; and no one, we suppose, will doubt the propriety of the construction. In fact, it seemed to be taken for granted on all sides that the act of 1855 intended the bar of the statute to run only against the *legal title*, and until it vested there was nothing in the owner to be effected by the limitation. (*Leese* v. *Clark*, 18 Cal. 535; S. C. 20 Id. 387; *Johnson* v. *Vandyke*, 20 Cal. 227, 229; *Davis* v. *Davis*, 26 Id. 46; *Beach* v. *Gabriel*, 29 Id. 585; *Hills* v. *Sherwood*, 33 Id. 479.)

On the fourteenth of June, 1860, Congress passed an act giving to the United States District Court certain authority over surveys—the fifth section of which provides that "the plat and survey so finally determined by publication, order, or decree, as the case may be, shall have the same effect and validity in law as if a patent for the land surveyed had

been issued by the United States." (Sec. 5 of act of June, 1860, Acts of 36th Congress, 12 U. S. Statutes at Large, pp. 33–34.)

In *Mahoney* v. *Van Winkle*, this Court held that the survey thus described was such a final confirmation as was contemplated by the act of our Legislature of 1855. (*Mahoney* v. *Van Winkle*, 33 Cal. 456, 457; *Seale* v. *Littlefield*, 29 Cal. 106; *Bernal* v. *Lynch*, 36 Id. 144.)

We have never been able to appreciate the soundness or logic of these decisions.

Either the act of 1855 by "final confirmation" did mean a *patent*, or it did not. If it did mean a patent, as this Court so frequently held that it did, then how absurd to say that Congress, by an *ex post facto* act, could make it mean something else!

2. The act of 1863 materially modified that of 1855. As held by this Court, the limitation runs wherever the owner is in a condition to bring an action for the possession.

If the defendant was in possession before the passage of the act under such circumstances as set the act of 1855 in motion, then the time which had already run was estimated in his favor. If he was in possession before the passage, but there was no patent to set the limitation of 1855 in motion, then the time should be estimated from the date of the passage.

It is only by piecing his possession since April, 1863, with his possession before that time, that enables defendant to put himself in a position to rely on the bar. But the character of his possession before April, 1863, must, of course, be tested by the act then in force, that, namely, of 1855.

Now, as we have shown, the act of 1855 proceeds upon the theory that the bar of the statute runs only against the legal title. And it is only upon the assumption that the legal title passes by the final adjudicated survey under the act of June, 1860, that such survey has been deemed a proper point of departure for the limitation. But if it appears, as most clearly it does, that such surveys do not pass the legal title and freehold, the whole argument against us falls to the ground.

*Glassell, Chapman & Smiths,* and *James H. Lander,* for the Respondent, argued that the facts found in the special verdict were sufficient to sustain the judgment, and cited *McDermott* v. *Higby,* 23 Cal. 489; *Vassault* v. *Seely,* 31 Cal. 225; *Mahoney* v. *Van Winkle,* 33 Cal. 448, and *Richardson* v. *Williamson,* 24 Cal. 289.

By the Court, Wallace, C. J.:

1. Aside from the effect of the Statute of Limitations, the verdict for the defendant cannot be supported.

The first specification of the grounds of the motion for a new trial is that "the evidence was insufficient to justify the verdict in this: that the title to the land in controversy vested in Henry Hancock in 1855, and since then by proper mesne conveyances vested and is now in the plaintiff in this action. There is no evidence to show that the title has ever been in the defendant." The premises were confirmed to the city of Los Angeles by the Board of United States Land Commissioners in 1856, and the decree of confirmation became final in 1858 by the dismissal of the appeal taken by the Government to the District Court of the United States. The title of the plaintiffs is derived from the city of Los Angeles through Hancock, who received a conveyance thereof from the city in 1855.

No question is made as to the validity of the deed to Hancock, nor is it denied that the title of the latter, derived from the city, is vested in the plaintiffs. The only title claimed by the defendant, irrespective of such title as he asserts by reason of the alleged adverse possession by his intestate for the statutory period, is derived through a conveyance made to him by the city in 1861, some six years subsequently to the making of the deed by the city to Hancock, the grantor of the plaintiff. There is not the slightest conflict in the evidence in these respects, and unless the verdict of the jury can be supported upon the supposed title of the defendant's intestate arising upon his adverse possession of the premises, a new trial should have been granted.

2. It is clear, however, that the adverse possession of the intestate of the defendant did not constitute a defense to

the action. The question of the sufficiency of the evidence in this respect is presented by the latter clause of the specification of grounds of the motion for a new trial, which has already been cited: " *There is no evidence to show that the title ever has been in the defendant.*" It is settled in this Court that the adverse possession of the defendant in an action of ejectment, if continued for the statutory period, creates a *title* in him to the lands so possessed, and under this specification it will be intended that the record contains all the evidence to establish a title in the defendant's intestate by reason of his adverse possession of the premises sued for.

As observed already, no such an adverse possession as would create a title in the intestate of the defendant was shown at the trial. Irrespective of the effect of the provisions of the act of Congress of June 14, 1860, referred to by counsel on the argument, it will scarcely be claimed that there was. The title of the plaintiff, being one derived from the Mexican Government and being shown to have been pending for confirmation before the tribunals of the United States in 1858, was protected from the operation of the Statute of Limitations of the State by the amendment of the sixth section of that statute, passed in 1855. In this view, it having been shown that no patent had been issued to the city by the United States, the plaintiffs had the whole period of time allowed by the act of 1863; that is, the period of five years from and after the 18th day of April, 1863, in which to commence their action, and they commenced it on the 16th day of April, 1868. Recurring now to the act of Congress of June 14, 1860, with a view to consider what effect, if any, it had upon the rights of the plaintiffs here, it must be taken that, after the passage of that act, the judicial approval of a survey pursuant to its provisions, was a "*final confirmation*" of the title within the intent of the sixth section of the act of this State, defining the time for commencing civil actions, as amended in 1855. It has been repeatedly and uniformly held so in this Court for more than ten years last past, and cannot now be considered open to discussion.

The statute of 1863, following upon and in support of the construction thus put by this Court upon the amended act of 1855, expressly enacted that the final confirmation mentioned in the second and third provisos in the sixth section of the act of 1863 should be either "*the patent issued by the Government of the United States, or the final determination of the official survey*" under the provisions of the act of Congress of June 14, 1860.   These provisos constitute exceptions to the otherwise general operation of the act of 1863, and it has been uniformly held here that a party claiming to be within the benefit of the exceptions must affirmatively establish his case in that respect; and this, too, must be considered as no longer an open question in this Court.

It was directly proven upon the part of the plaintiffs that their title had been confirmed by the Board of the United States Land Commissioners in 1856, and that the decree of confirmation became final in 1858, by reason of the abandonment of the appeal by the Government; and it was also proven, in substance, that no patent had ever been issued upon such confirmation.   We do not overlook the fact (italicized in the brief of the defendant's counsel), that the proof as to the non-issuance of the patent was only "that *so far as the present mayor of said city knows,*" no patent had been issued; but we consider that the want of such knowledge upon the part of the chief executive officer of the city, when it was his official duty to know it, if the event had transpired, sufficiently establishes at least *prima facie* that no patent had in fact been issued by the Government.   And we think, too, that the facts proven by the plaintiffs, as to the confirmation of their title, *presumptively,* at least, established the further fact that the official survey of the lands confirmed to the city of Los Angeles had never been finally determined under the act of Congress of June 14, 1860.   The confirmation of the title of the city, as proven by the plaintiffs, was obtained from the Board of United States Land Commissioners and *not* from the District Court of the United States; the duty to make final survey of the lands confirmed to the city, therefore, was cast by law upon the Surveyor-General, acting in subordination to his superiors in the Executive de-

partment of the Government, and not subject to the direction or control of the District Court of the United States.

It should be remembered that by the provisions of the act of Congress of June 14, 1860, the District Court of the United States was not vested with general jurisdiction to adjudicate surveys made by the Surveyor-General of the United States. The jurisdiction in this respect was confined to cases in which a final decree of confirmation of title had been entered in the District Court, and did not embrace cases, such as the one now under consideration, in which the final decree was that of the Board of United States Land Commissioners. It had no jurisdiction to examine or adjudicate surveys in cases of the latter class, save in the exceptional instances in which surveys had already been returned into court, and remained pending there at the time of the passage of the act. We lately had occasion to examine this question in the case of *Sabichi* v. *Aguilar* (43 Cal. 285), where the decisions on this point are referred to and this conclusion reached.

Presumptively, then, the adjudication of this survey of the lands confirmed to the city of Los Angeles, by the decree of the Board of Commissioners, was not within the rightful jurisdiction of the District Court of the United States, under the provisions of the act of Congress referred to. It could only be held to be so by showing the fact exceptional in its character, that the survey was already before that court, and pending there upon objections, in June, 1860. To establish such an exception to the rule generally applicable to cases such as the confirmation to the city, would, of course, devolve upon the defendant, and this he must do by affirmative proof of the fact. In the absence of such proof, the presumption must be indulged that the exclusive jurisdiction over the survey of the city lands was retained in the Executive department of the Government.

It results from these views that the motion for a new trial should have been granted. Order reversed.

RHODES, J., dissenting:

The land in controversy formed a part of the pueblo lands of Los Angeles. The city of Los Angeles succeeded to the title of the Pueblo, and both parties claim title under the city. The defendant also relies on the Statute of Limitations. The jury in response to special issues submitted to them, found that the defendant had been in the adverse possession for more than five years before the commencement of the action; that the claim of the city to the pueblo lands was confirmed by the Board of Land Commissioners in 1853; that the appeal therefrom to the District Court was dismissed, February 2, 1858; "that so far as the present mayor of said city knows, no patent for said city lands has ever been issued, and that no other facts were proven in regard to the confirmation, survey, or patent of the lands of the city." The jury also found a general verdict for the defendant.

The only questions discussed here which require notice relate to the Statute of Limitations. The court instructed the jury to the effect that if the plaintiff sought to avail himself of the provisions to the sixth section (the supplemental section) of the amendatory act of 1863, the burden of proof was upon him to show the facts which brought the case within the provisos. That rule was laid down in *Richardson* v. *Williamson* (24 Cal. 289), and was approved in *Vassault* v. *Seitz* (31 Cal. 225), and other cases in this Court; and the rule having been acquiesced in for more than ten years, ought not to be disturbed except for the most cogent reasons. The able argument of the plaintiff has failed to shake my confidence in the correctness of that rule.

The plaintiff presents, and argues at some length, the point that in a case of this character, nothing except a patent will set the Statute of Limitations in motion. The evidence that the claim of the city had been presented to and confirmed by the Board of Land Commissioners, and that the appeal from the decree of confirmation had been dismissed by the United States District Court, on the 2d day of February, 1858, showed, of course that proceedings for

final confirmation were pending at that date. That evidence, in the absence of evidence of final confirmation, established by presumption the fact that proceedings for final confirmation were pending at the passage of the act of 1863. The sixth section of the Statute of Limitations of 1855, therefore, had not commenced to run when the act of 1863 was passed; and as the action was commenced less than five years after the passage of the act of 1863, it is palpable that the plaintiff's cause of action was not barred by the statute. It thus appears that the point argued by the plaintiff is not presented by the record. Although it is manifest from the facts presented by the record, that the plaintiff was not barred by the Statute of Limitations, yet we cannot reverse the judgment on that ground; for, first, the general verdict may not have been found on that ground; and second, if it was so found, the question of the *sufficiency* of the *evidence* to sustain the verdict on that issue is not presented by any specification in the statement on a new trial.

I am therefore of the opinion that the judgment and order should be affirmed.